[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on July 5, 1986 in Berkeley, California. They have resided continuously in this state since 1989. There is one minor child issue of the marriage, Paul M. Zachary born January 24, 1987.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The court has carefully considered the criteria set forth in 46b-56, 46b-81, 46b-82 and 46b-84 of the Connecticut General Statutes in reaching the decisions reflected in the orders that CT Page 583 follow.
The parties are at odds concerning the custody of their minor child Paul Zachary, born January 24, 1987. The child will turn 4 years old on January 24, 1991. The custody question is further complicated by the plaintiff's desire to return to California. Both parties have only lived in Connecticut since November-December of 1988. The plaintiff's background is in California where she was born and educated. The plaintiff taught school in California for 13 years and was a tenured teacher in California at the time she and the defendant left for Chicago. Although both of her parents are deceased, she does have a married sister living in California. The plaintiff's sister and husband both testified on behalf of the plaintiff in this matter.
The parties left California in December 1986 and lived in Chicago from approximately December 1986 to November — December 1988. The minor child was born in January 1987 while the parties were living in Chicago. The parties had met in California when the defendant was attending graduate school. The parties had lived together in California since June 1980 and subsequently married on July 5, 1986. The plaintiff is 39 years of age and the defendant is 35 years old.
The defendant is a product of the east coast. His parents reside in Boston and he himself is a graduate of Harvard. The defendant went to California in 1979 to attend Berkeley as a graduate student. After the defendant completed his doctoral program in December 1986, he took a post doctoral fellowship at the University of Chicago. After completion of this fellowship, the defendant accepted a position in November 1988 with Cray Research in Darien, Connecticut, where he is currently employed. The defendant has an ended family in the Massachusetts — New York area.
The plaintiff has not worked in Connecticut except for some summer teaching at the Stamford Nature Center in 1989, and is presently unemployed.
Within a month of moving to Connecticut, the defendant sought the advice of an attorney over what he perceived as marital difficulties in the parties' marriage. The parties appear to have had different ideas as to child rearing and much was made over naps, bottle vs. no bottle, and bed vs. crib. Although the parties went to marriage counseling in February 1989 (after the defendant had been to an attorney), no effort was made by either party to seek assistance and/or advice from the child's pediatrician concerning their parenting skills.
The year 1989 was a year filled with turmoil for both CT Page 584 parties. Both were seeing marriage counselors, therapists and psychologists during the course of the year. The defendant moved out of the marital home for short periods of time in June 1989 and again in October 1989.
The marital situation came to a head when the plaintiff instituted this present action in December 1989.
No useful purpose would be served by reviewing all of the evidence presented in this matter which consumed approximately 20 days of trial. Unfortunately, the parties were unable to resolve their marital difficulties. Sufficient evidence was presented at trial to clearly establish that the marriage has irretrievably broken down.
Custody
Each party has requested sole custody of the minor child, Paul, who will be 4 years old on January 24, 1991. The defendant has also requested joint custody. In addition to the testimony of the plaintiff and the defendant, the court had the benefit of the Family Services Counselor, the attorney for the minor child, Clinical Psychologists, Dr. Roy A. Nisenson, Dr. Jerome Broclie, Dr. Mary Siegel, Dr. Herbert Sacks, a psychiatrist and friends and relatives of the parties.
The court finds that both parties are capable, loving, nurturing and caring parents. Both are concerned about the welfare of their child — although the plaintiff and the defendant have not spoken to each other for some period of time.
Dr. Roy A. Nisenson, a Clinical Psychologist, testified at length concerning his psychological evaluation of Andrew Zachary, Dorothy Zachary and Paul Zachary. Dr. Nisenson, saw Mr. Zachary nine times before he first saw Mrs. Zachary. Dr. Nisenson received a fee of $10,000 from the defendant prior to his testifying in court. Dr. Nisenson prepared an extensive and intensive report (61 pages) in addition to his court testimony.
Dr. Nisenson had read the deposition of the plaintiff, previous court proceedings and the Family Service's report, among others. It was Dr. Nisenson's opinion that the plaintiff had a Borderline Personality Disorder, a personality configuration. Dr. Nisenson traced back to the plaintiff's early age trauma and experiences with respect to her parents and stepmother. In spite of her difficulties, Dr. Nisenson felt she was a survivor and with psycho-analytical treatment, or Lifrist therapy, over a long period of time, she could be helped. Dr. Nisenson indicated that the minor child was active, verbal, bright, sensitive and had a normal range of emotional and psychological CT Page 585 functioning. Further, Dr. Nisenson indicated that both parents were loving, and had great concern and devotion for their child.
Although the defendant spoke at length with Dr. Nisenson over the period February through June 1990, the defendant never, discussed with Dr. Nisenson his plans to video film the child, or his penchant for X-rated movies having to do with anal intercourse, nor did the defendant disclose to Dr. Nisenson his scheme for having his mother come from Boston and remove furniture from the marital home while both parties were in court.
All the experts agreed that at this time, the minor child is thriving and doing well. Dr. Sacks indicated the child was very advanced for his age, was sensitive and responsive and very bright.
Dr. Brodlie found no psychological pathology with respect to the plaintiff, as opposed to Dr. Nisenson's findings of Borderline Personality Disorder. Dr. Brodlie found a young child who was responsive to the plaintiff's nurturing and had bonded with the plaintiff.
The defendant has spent time with the minor child during the past year and the experts appeared to agree that the defendant had also established a bonding with his son. The minor child has passed through his early milestones normally, a credit to the plaintiff as well as to the defendant and in spite of the waging war going on around him.
In weighing the pros and cons of each parent being the custodial party, as well as joint custodians, the court has concluded that it would be in the best interests of the minor child for the plaintiff to be awarded sole custody, and it is so ordered.
Relocation
Each party had their own agenda as to what was best for themselves. The plaintiff had her own interests in mind in that she could teach in California, her sister lived their, she had been happy in California and California was her home for the majority years of her life. The defendant was concerned that he would not be able to see his child as frequently as he desired, if the child should go to California. His parents (the paternal grandparents) would not be able to see the child as frequently as they had during the time the parties lived in Connecticut, and he was now employed in Connecticut, on the east coast — his home base.
The court is concerned with what is in the best interests CT Page 586 of the child. Should the child, aged 3 years and 10 months, (4 years old on January 24, 1991), be separated from one parent by over 3,000 miles?
A younger child needs more frequent contact with both parents, whereas, an older child might be able to withstand less frequent contact with one parent. At age 3 to 4, a child needs nurturing and structure from both parents. Each parent's role in his development is important. At times, the parents' contributions are unique and may even overlap. The realistic opportunity for visitation in California perhaps monthly, in lieu of a regular weekly pattern of visitation in Connecticut, which can provide the basis for preserving and fostering the relationship between father and son, would be thwarted by a move to California. Although the plaintiff might benefit from such a move, the visitation rights of the defendant would be adversely affected and this would be inimical to the best interests of the child. It may be as easy or as difficult for the defendant, based on his educational background, to obtain other employment in California, as it is for the plaintiff to obtain employment in Connecticut. The court is not unmindful of the difficulty in obtaining teaching positions in Connecticut at the present time. The plaintiff felt confident she could obtain a teaching position in California and in fact, had the oral promise of a teaching position in a school the minor child would attend in California.
Although the plaintiff has a compelling good faith reason to move, and the court sympathizes with her, such a move at this time would not be in the best interests of the minor child and would adversely affect the visitation rights of the defendant which would affect the child. Certainly, if the defendant obtained employment outside the state of Connecticut, the court would reconsider its position and look favorably upon the plaintiff's move to California. Both parties brought this child into this world and both parties have an obligation and a duty toward this child, to both act in the child's best interest. Both parties will have to put their interests secondary to the childs. The child loves both parents and needs both parents. Each parent has something positive to give to this child, especially now during the early years of this child's life. Whether a move to California will maintain or improve the general quality of life of both the plaintiff and the child, is not known. The child has never lived in California.
The photographs of the plaintiff's proposed living quarters in California appeared very appropriate and quite lovely. The plaintiff had also inquired of an appropriate school for the minor child which was in close proximity to the proposed home. The plaintiff does not have to remain in CT Page 587 Fairfield County which she feels is economically not feasible, and where she feels she has been unable to make friends. (She did however, have two friends testify on her behalf during the course of the trial).
Although the plaintiff was a tenured teacher in California for 13 years prior to the birth of the minor child, at the present time she has no employment in either California or Connecticut. The plaintiff is bright and articulate and has shown that she is a survivor. It is probably true that with her educational background she may have had an easier time in obtaining employment in California. The court expects she will be able to overcome any difficulties she may encounter in obtaining employment in Connecticut.
The court does not find that the plaintiff's motive to return to California is a desire to defeat or frustrate the defendant's visitation rights. Both parties are being called upon to face up to their responsibilities and to make sacrifices to assure that their child will have continuous contact with both parents.
If the defendant chooses to obtain employment outside the state of Connecticut, then the court would favorably reconsider a request by the plaintiff to relocate to another state with the minor child. An older child might be able to withstand less frequent contacts as long as the child had a reasonable amount of quality time with the distant parent.
If the defendant should relocate to Maryland or the D.C. area, or some other area, then the plaintiff should also have the privilege of relocating with the minor child to an area of her choice. The court is ordering that the child remain in Connecticut so that the child will have the benefit of both parents at this stage of his life. If the defendant were to remove himself from this state, then the cornerstone for having the plaintiff and child remain in Connecticut would be gone and the plaintiff should also have the right and the ability to relocate with the child.
Although the court finds that the plaintiff has a compelling good faith reason to move, the court finds it is not in the best interests of the child to lose the more frequent contact the child will have with the defendant by remaining in Connecticut.
Each parents' continuing role is important for the child and both parents are being called upon to continue to contribute to the well being of their child by both having frequent and regular contact with the child. CT Page 588
Sole custody of the minor child is awarded to the plaintiff.
The minor child shall remain in Connecticut until further order of this court. This has been a difficult decision and one that will cause unhappiness to all involved. It is not a compromise decision, but rather the court has tried to focus on what is in the best interests of the minor child. In spite of the short-comings of both parents, the child has nurtured and will only benefit in the future from what each parent has to offer.
The defendant has been most tenacious in this custody quest and the issue of relocation. He has exhausted most of his assets in addition to receiving substantial financial assistance from his parents. The defendant flew in several witnesses from out of state and provided the funds for their transportation costs. The defendant also produced a 15 minute edited video tape of the defendant and child. In the tape, the child appeared solemn, unsmiling and a little frightened. He did not appear to return the affection of his father. The child appeared happy and comfortable when swimming in the pool. The tape was prepared without the knowledge of the attorney for the minor child.
During the course of this litigation, the defendant had his mother come to Connecticut from Massachusetts with a rented van and while the parties were in court on Pendente Lite Motions, the defendant's mother on instructions from the defendant, removed certain items of furnishings and furniture from the home including a piano.
The defendant has been able to spend weekends and vacations in Boston with his child and with his family and this has been a source of support for the defendant.
The plaintiff has not had the benefit of family or support available to her within close proximity. Unfortunately, the plaintiff has been emotionally in a dissolution situation since January — February 1989. As indicated previously, the defendant left the plaintiff, who had no job, a small child, no family in Connecticut, a few friends, a little cash, on two separate occasions in 1989.
In February, 1989 the defendant took the child out for a walk in the morning and unbeknown to the plaintiff, the defendant took the child to Boston to his family, without telling the plaintiff. CT Page 589
On another occasion when the defendant had the child for visitation, he neglected to advise the plaintiff promptly, that the child had developed chicken pox.
The defendant consulted with an attorney in Connecticut in January 1989 and again in June 1989, and in November 1989 in addition to several phone discussions with counsel. He consulted with attorneys in Boston and California. On two separate occasions the defendant left the marital home leaving the plaintiff uncertain as to her future and financial circumstances. Certainly the plaintiff did not have a chance to become acclimated and appreciate and enjoy life in Connecticut between marital problems, parenting disputes, marital counseling, psychologists, psychiatrists and attorneys.
Prior to the pendente lite hearings as to alimony, custody and child support in February 1990, the defendant reduced his work schedule to part-time, ostensibly to spend more time with his child. In fact, the defendant did not spend the additional time with his child and did not return to full-time work until approximately October 1990.
In spite of the defendant's excellent educational background, some of his judgments toward the plaintiff and thus indirectly toward the minor child during the course of this litigation, leave much to be desired.
The plaintiff is strongly urged to obtain the appropriate treatment in whatever form, whether it be counseling or therapy as recommended by Dr. Nisenson to assist her in her day to day living and associations with others and to obtain peace and harmony in her own life, which will also have a positive impact on the minor child.
The court has considered the advice of the experts, the psychologists and psychiatrists as presented in this matter as well as the advice of the attorney for the minor child. The court has also taken into account the parents' past behavior as it relates to their parenting ability and to their consistency in parenting and lifestyle insofar as these factors might affect the child's growth.
Parenting and Visitation
1. The defendant shall have visitation with the minor child on the 1st and third weekends of each month from Friday at 4:00 p.m. to Monday at 9:00 a.m.
2. The defendant shall have visitation with the minor child on the second weekend and the fifth weekend when there is CT Page 590 one, of each month from Friday at 4:00 p.m. to Sunday at 10:00 a.m.
3. The defendant shall have the minor child overnight during the week from Wednesday at 4:00 p.m. to Thursday at 9:00 a.m.
4. The plaintiff shall have the minor child during the 14th weekend of each month.
5. The child's birthday shall be alternated with each parent.
6. The plaintiff shall have the minor child on Mother's Day.
7. The defendant shall have the minor child on Father's Day.
8. Each parent shall have 4 weeks in two-week periods, nonconsecutive, in the summer as their vacation time.
9. The parties shall alternate the following holidays on the following schedule:
A. The defendant shall have the following holidays in a given year:
 Martin Luther King Day July 4th Weekend Columbus Day Thanksgiving from 3:00 p.m. Thursday to Monday 9:00 a.m. The pre-Christmas period
B. The plaintiff will have in that same year, the following holidays:
 President's Day Memorial Day Labor Day Veterans Day From 1:00 p.m. Christmas Day through the remainder of of the Christmas vacation — including New Years.
10. When the child is attending school, commencing with the first grade, the parties shall alternate the February School Vacation and the April School Vacation.
11. Although the weekends and holidays will be divided as mentioned above, both parties shall pay special attention to special events and shall go out of their way to give the other party custody on weekends containing these special events. Special events include weddings, funerals, family reunions and CT Page 591 any other similar scheduled events.
12. The parties shall have reasonable access to the child while he is with the other party, including access by telephone during reasonable hours of the day and evening.
13. The defendant shall notify the plaintiff in the event he plans to exercise his visitation with the child outside the state of Connecticut.
14. Each party shall promptly notify the other of any illness or accident or other circumstances seriously affecting the health or welfare of the child.
15. The plaintiff shall select a pediatrician for the minor child after consulting and conferring with the defendant. The defendant shall have access to all medical records of the child and shall be advised of any medical problems of the child.
16. Both parties shall be guided by the pediatrician's advice in connection with the parenting of the minor child. Both parties need assistance with their parenting skills and must understand that a certain amount of flexibility is necessary in raising children.
17. Both parties shall engage in course of counseling and/or therapy to avoid conflict in the parenting of their minor child — which conflict will only work to the detriment of the minor child and not be in the best interest of their minor child.
18. The plaintiff shall give the defendant advance notice of any significant non-routine medical treatment of the child. In the event the defendant questions or disagrees with any such proposed treatment, he shall have the right to consult with the child's pediatrician and/or take the child to a physician of his own selection for a second opinion. The defendant shall have full access to the child's medical records. The day to day decisions as to medical and dental treatment of the child shall be the plaintiffs.
19. The plaintiff shall make all day to day lifestyle decisions as they relate to the minor child.
20. Both parties shall seek each other's input and shall consider the other's views in reaching decisions about the minor child. The parties shall consult and confer with each other with respect to reaching decisions about the health, education and religion of the minor child. The parties shall attempt to adopt a harmonious policy best suited to the best CT Page 592 interests of the child.
21. The plaintiff shall make the final decision regarding the child's education, commencing with 1st grade, after consulting and conferring with the defendant and the appropriate schools. Said school shall be within close proximity to the child's home. Both parties shall be entitled to have access to all school records of the minor child. The defendant shall receive notices of any and all activities in which the child participates in school, including parent/teacher conferences, plays, and miscellaneous school functions.
22. The defendant shall make the final decision for an unbiased independent psychiatrist to see the child on a periodic basis. The defendant shall consult and confer with the plaintiff over an appropriate psychiatrist to examine the minor child. The plaintiff shall be advised of all visits by the child and by the defendant to the child's psychiatrist. The plaintiff shall co-operate fully with the child's psychiatrist. The plaintiff shall be entitled to full access of the child's mental health records in this regard.
23. Both parties must understand that each child is unique, is made of flesh and bones, and is not a scientific experiment. What works for one child may not work for another.
24. The parties shall exert every reasonable effort to maintain free access and unhampered contact between the child and the parties. Neither party shall do anything which may estrange the child from the other party nor injure the opinion of the child as to the other parent, nor act in such a way as to hamper the free and natural development of the child's love and respect for the other parent.
25. The parties are referred to the Family Services to mediate any dispute with respect to visitation or for a refinement of the above parenting/visitation schedule. The court retains jurisdiction for all matters not resolved by mediation.
Alimony and Child Support
The defendant has his Phd. in Astro Physics. He has a bright and promising career ahead with unlimited potential. At the present time he is earning a gross of approximately $58,864 per year. The defendant also participates in a profit sharing program, a bonus program and a stock option plan at his place of employment. CT Page 593
The plaintiff is presently unemployed. She has never worked in Connecticut except for a very brief time during the summer of 1989. Prior to her marriage and the birth of their child, the plaintiff was a tenured teacher in California, having taught in California for 13 years. The plaintiff's employment career in Connecticut is speculative and unknown at best. The plaintiff is bright and articulate and it is contemplated she will obtain full-time employment in the future. No salary was indicated with respect to the plaintiff's proposed offer of employment in California. It would appear that it will take some time before the plaintiff is able to obtain employment in the teaching field in Connecticut
The following orders shall enter:
1. The defendant shall pay to the plaintiff as unallocated alimony and child support the sum of $2,450 per month commencing February 1, 1991 annualized at $29,400 per year until the wife's death, her remarriage or February 1, 1998 whichever first occurs.
2. At the time alimony shall terminate for any of the reasons as set forth above, prior to the minor child's 18th birthday, then the parties shall return to court for an appropriate order of child support. The unallocated order shall remain in full force and effect until an appropriate order of child support is entered and ordered.
3. The plaintiff shall be entitled to earn $30,000 annually prior to the defendant obtaining a modification of the amount based upon a claim that the wife's income has increased due to her employment.
4. So long as the child attends the pre-school program or day care program at Mead School, the de defendant shall be responsible for the costs thereof.
5. The defendant shall be responsible for the cost of "Tumble Bugs" or other comparable activity not to exceed the amount presently paid for "Tumble Bugs."
Life Insurance
To secure the payment of unallocated alimony and child support, the defendant shall name the plaintiff as the irrevocable beneficiary of $250,000 of life insurance for so long as he is obligated to pay unallocated alimony and support and/or child support.
Medical Coverage CT Page 594
1. The defendant shall provide medical coverage for the benefit of the minor child as is available through his place of employment. So long as the plaintiff is unemployed, the defendant shall pay all reasonable unreimbursed medical, mental health and dental expenses of the minor child.
2. Upon the plaintiff's obtaining full-time employment, the parties shall equally divide all reasonable unreimbursed medical, mental health and dental expenses of the minor child.
3. The defendant shall provide COBRA benefits as provided by law for the benefit of the plaintiff at the defendant's expense for a period of one year from the date hereof or until the plaintiff obtains employment, whichever event shall first occur.
Property Division
1. The plaintiff is awarded the entire balance of the amount in the Schwab Account. Said account shall be transferred to the plaintiff immediately.
Attorneys' Fees
1. The attorney for the minor child is awarded attorney's fees in the amount of $48,000. (which includes payment to date.)
2. The plaintiff shall pay 1/3 of the fees of the attorney for the minor child. The plaintiff shall pay 1/2 of the 1/3rd within 30 days of date and the balance within one year thereafter.
3. The defendant shall pay 2/3rds of the fees of the attorney for the minor child. The defendant shall pay 1/3 of this amount within 30 days of date and the balance of 1/3rd within 90 days thereafter.
4. Each party shall pay their own respective attorneys' fees.
Personal Property
The parties have already divided their personal property to their mutual satisfaction.
Miscellaneous Property
1. The plaintiff shall be entitled to one-half of CT Page 595 the Darien House security deposit.
2. The defendant shall be entitled to the remaining assets as listed in his December 5, 1990 affidavit.
3. The plaintiff shall be entitled to the remaining assets as listed on her December 5, 1990 affidavit.
Counsel for the plaintiff and the defendant are to be complimented for their preparedness and high degree of professionalism in presenting this matter. The attorney for the minor child provided invaluable services for the court in his representation of the interests of the minor child.
An immediate withholding is ordered.
COPPETO, J.